**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JOYCE HENNING, | : |
| Plaintiff, | : Civil Action No. 08-3735 (FLW) |
| v. | : |
| TOWNSHIP OF BLAIRSTOWN, <u>et al.</u> | : **OPINION** |
| Defendants. | : |

**WOLFSON, United States District Judge**:

      Presently before the Court is a Motion for Summary Judgment by defendants, Township of Blairstown, Mayor and Council of the Township of Blairstown, Blairstown Police Department, Director Thomas P. Krisak and Officer Kyle Dalrymple (collectively "Defendants"), to dismiss Plaintiff Joyce Henning's ("Plaintiff" or "Henning") claims in their entirety based upon Defendants' contention that Plaintiff has failed to provide competent evidence to establish a constitutional violation. This Court agrees that there is no evidence to support Plaintiff's contention that the circumstances surrounding her December 23, 2006 arrest amounted to a violation of her civil rights under the Fourth and Fourteenth Amendments. Accordingly, for the reasons that follow, this Court grants Defendants' Motion for Summary Judgment.

      **I. BACKGROUND**

      On December 22, 2006, Blairstown Police Officers Kyle Dalrymple and Stephen Losey responded to an emergency call at Plaintiff's residence. In addition to Plaintiff,

1

present at Plaintiff's home were her son, Robert "Scott" Henning (herinafter "Scott Henning") and her daughter-in-law, Patricia Henning.  Defendants' Statement of Undisputed Material Facts ("Defendants' Stmt.") at ¶ 1.  Plaintiff's son, who had been involved in an argument with his wife, had locked himself in a bedroom with a gun pointed at himself and threatened to shoot anyone who attempted to enter.  Id. at ¶ 2-3.  The Warren County TAC team arrived and, while Officers Losey and Dalrymple were exiting the home, Scott Henning fired a total of 8 shots.  Id. at ¶¶ 4-5.  Ultimately Scott Henning surrendered and Plaintiff eventually left the scene.  Id. at ¶ 6-7.

Plaintiff returned to her home late in the evening on December 22, 2006 and was met by Blairstown Officers Jonathan Bee and Anthony Zaremba, who were guarding the property.  Id. at ¶¶ 9-10.  They advised Plaintiff that she was not permitted to enter the premises at that time because it was considered a crime scene.  Id. at ¶ 11.  Ultimately Officer Zaremba escorted Plaintiff into her home so that she could retrieve medication.  Id. at ¶ 13; Plaintiff's Statement Disputing Defendants' Stmt. ("Plaintiff's Responsive Stmt.") at ¶ 13.  Defendants assert that Officer Zaremba advised Plaintiff that she could not return to her home until she received a call from the prosecutor's office.  Defendants' Stmt. at ¶ 15.  Plaintiff contends that she was told that she could return to her home the following morning at 7:00 a.m.  Plaintiff's Stmt. of Material Facts ("Plaintiff's Stmt.") at ¶ 5-7.

On December 23, 2006, at approximately 7:12 a.m., Plaintiff returned home.  Defendants' Stmt. at ¶ 18.  It is undisputed, that the exterior of Plaintiff's property had been marked with yellow barricade tape containing the words "Police Line Do Not Cross".  Id. at ¶ 17.  Upon exiting the vehicle driven by her friend, Meredith Cole,

2

Plaintiff began to walk past traffic cones and police tape onto the driveway abutting her residence.  Id. at ¶¶ 18, 20.   The parties' versions of events diverge at this point. Defendants contend that Officers Bee and Dalrymple approached Plaintiff and repeatedly advised her that she was not permitted on the property because it was a crime scene.  Id. at ¶ 21.  Officer Bee testified during his deposition that Plaintiff responded by stating "[i]t's my house. I'm going in.  I don't care."  Id. at ¶22; Bee Dep. at 26:12-13. Defendants contend that Plaintiff ignored the verbal commands of Officers Bee and Dalrymple and, when advised that if she continued to advance onto the property she would be arrested, Plaintiff responded by stating "go ahead and try."  Defendants' Stmt. at ¶ 24; Deposition Transcript of Jonathan Bee, 28:23.  When Dalrymple advised Plaintiff that she was under arrest, Plaintiff stated "Do what you have to do."  Id. at ¶ 25; Henning Dep. 41:16-17.  At that point, Dalrymple instructed Plaintiff to place her hands behind her back.  Id.  Although Plaintiff initially complied and Dalrymple placed a handcuff around Plaintiff's right wrist, Dalrymple and Bee contend that Plaintiff began to resist arrest by pulling away and turning her body.  Id. at ¶ 26.  According to the deposition testimony of Dalrymple and Bee, it was during this time, when Plaintiff was pulling away from Dalrymple, that both he and Plaintiff fell to the ground.  Dalrymple testified that he did not know how "either one of [them] fell", stating "I believe that in moving in, like, a circular type patter, I don't know if my feet got tangled in my own feet or I got tangled in her or what exactly happened.  But basically, the next thing I knew we were both on the ground."  Defendants' Stmt. at ¶ 31; Dalrymple Dep., 54:2-7.

Plaintiff counters Defendants' version of the events stating in opposition to the instant motion that "[s]he complied with [Dalrymple's] request to be handcuffed and in his irrational, unreasonable and confrontational manner, he forcefully threw her to the

3

ground fracturing the zygomatic arch of this 65-year old widow." Plaintiff's Opposition Br. at 5. Plaintiff fails to provide any citation in her briefing in support of her assertion that Officer Dalrymple "forcefully threw her to the ground." Presumably, Plaintiff's assertion in this regard is based upon Plaintiff's Statement of Material Facts submitted in opposition to the instant motion in which she asserts the following:

> 15. Cole testified that after the handcuffs were placed on the Plaintiff she (the Plaintiff) was forcefully thrown to the ground. (Cole Municipal transcript 82:1-14 and Cole deposition 32:4 and 47:3).
> 16. Plaintiff testified that when she was right in front of the officers she was told she could be arrested for trespassing. She replied "I said well then you have to do what you have to do, and I put my right arm out." She further testified that she put her hand out, and the officer missed her wrist with the handcuff and she turned her head to talk to him and that is when they went to the ground. [Plaintiff's Stmt. at ¶¶ 15-16; Municipal Court Transcript of Plaintiff's Testimony 100:102.]

Following her arrest, Plaintiff was charged with criminal trespass, obstruction of the administration of law and resisting arrest. Defendants' Stmt. at ¶ 39. Plaintiff was acquitted of resisting arrest, but was found guilty on the charges of obstruction of the administration of law and criminal trespass, which were merged for sentencing in North Warren Municipal Court. Defendants' Stmt. at ¶ 39; Plaintiff's Responsive Stmt. at ¶ 39.

Plaintiff commenced this action against Defendants on July 24, 2008. Although not a model of clarity, the Complaint appears to allege a Section 1983 claim for false arrest, false imprisonment and excessive force arising out of her arrest on December 23, 2006, Section 1983 claims against the Township of Blairstown, its Police Department and various officials (collectively, the "Municipal Defendants") based upon Officer Dalrymple's actions, and state law claims relating to her arrest. In opposition to the instant motion, Plaintiff concedes that she has not established liability as to any of the

4

Municipal Defendants. Accordingly, for the purposes of the instant motion, this Court considers only whether summary judgment is appropriate in connection with the claims against Officer Dalrymple.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 202 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Anderson, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 447 U.S. at 255)); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).

The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. Celotex, 477 U.S. at 330. "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

The non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005) (quotations omitted). Under Anderson, Plaintiffs' proffered evidence must be sufficient to meet the substantive evidentiary standard the jury would have to use at trial. 477 U.S. at 255. To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (quotations omitted); see also Matsushita, 475 U.S. at 586; Ridgewood Bd. of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323; Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992).

      Finally, the Court notes that while it must view the disputed facts in the light most favorable to Plaintiff, see Marino v. Indus. Crating Co., 358 F.3d at 247, in accordance with Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Court will not draw inferences in Plaintiff's favor that would necessarily negate the findings of the municipal court in connection with Plaintiff's conviction on the charges of

obstruction of the administration of law and criminal trespass. See Garrison v. Porch, No. 08-2453, 2010 WL 1511394, * 3 (3d Cir. Apr. 16, 2010) ("A claim for damages under § 1983 will only be barred under Heck when the claim, if successful, necessarily invalidates the prior conviction.").

### III. DISCUSSION

Section 1983 of Title 42 of the United States Code provides a private cause of action against any person who, acting under color of state law, deprives another of rights, privileges, or immunities secured by the Constitution or laws of the United States. The statute, in and of itself, is not a source of substantive rights but provides "a method for vindicating federal rights elsewhere conferred."[1] Graham v. Connor, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (quotations omitted). To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the constitution or laws of the United States, and (2) the deprivation was done under color of state law. See West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); Sample v. Diecks, 885 F.2d 1099, 1107 (3d Cir. 1989).

"An arrest made without probable cause creates a cause of action for false arrest under 42 U.S.C. § 1983." O'Connor v. City of Philadelphia, 233 Fed.Appx. 161, 164 (3d Cir. 2007). Plaintiff asserts that summary judgment is inappropriate because Dalrymple lacked probable cause to effect the arrest. Plaintiff contends that Dalrymple "created the

---

[1] 42 U.S.C. §1983 provides, in pertinent part:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

7

circumstances leading to [her] arrest." Opp. Br. at 6.  In short, Plaintiff appears to assert that summary judgment is not appropriate on her claim of false arrest because the issue of probable cause is one for the jury.  See Opp. Br. at 8 (citing Patzig v. O'Neil, 577 F.2d 841, 848 (3d Cir. 1978); Montgomery v. DeSimone, 159 F.3d 120 (3d Cir. 1998)).

For a claim to be cognizable under § 1983, however, it must not imply the invalidity of a claimant's state court convictions.  Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).  Although not argued by the parties,[2] the doctrine enunciated in Heck v. Humphrey is applicable in the case at bar.  In Heck, the Supreme Court held, *inter alia*,

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.  [512 U.S. at 486-87].

Insofar as Plaintiff asserts a claim under § 1983 for false arrest and false imprisonment, the Court finds the claims barred by Heck.  It is undisputed that Plaintiff was convicted of obstruction of the administration of law, in violation of N.J.S.A. 2C:29-1A, and criminal trespass, in violation of N.J.S.A. 2C:18-3B9(1).  Certification of Peter Lamont, Esq. ("Lamont Cert."), Ex. I.  While the Third Circuit has made clear that

---

[2]   While Defendants do not discuss the Heck doctrine, they do point out that a finding of probable cause is supported "by the decision of the North Warren Municipal court which found Plaintiff guilty on the charges of obstructing justice and trespassing." Reply Br. at 4.

"claims for false arrest and false imprisonment are not the type of claims contemplated by the Court in Heck which necessarily implicate the validity of a conviction or sentence", Montgomery v. De Simone, 159 F.3d 120, 126 n.5 (3d Cir. 1998), here, where Plaintiff was convicted of the very offenses which precipitated the arrest, probable cause is established by virtue of the conviction on those offenses.  Indeed, as the Third Circuit recognized in Woodham v. Dubas, 256 Fed.Appx. 571, 576 (3d Cir. 2007), while a claim for false arrest may, under certain circumstances, proceed in a § 1983 action despite a valid conviction, such claim is barred by Heck where it would compromise the validity of the underlying state court convictions.

Here, Plaintiff cannot prevail on her false arrest and false imprisonment claims without impugning the validity of her municipal court convictions of obstruction and criminal trespass.  The probable cause substantiating the arrest was the very conduct which gave rise to Plaintiff's conviction on charges of obstruction and criminal trespass.  In other words, the fact that Plaintiff refused to comply with instructions to leave her property at a time when it was considered a crime scene was the probable cause for her arrest.  Plaintiff's assertions regarding Dalrymple's purported hostility toward her resulting from the incidents involving her son the prior evening simply do not negate the facts giving rise to her convictions on charges of obstruction and trespass.  As Defendants point out, in the course of her deposition, Plaintiff conceded that she was informed that she could not return to her house until the investigation was completed (Henning Dep. at 28:4-23) and, further, that despite her knowledge that she was not allowed on her property, she continued to advance toward Officers Bee and Dalrymple. (Henning Dep. at 35:15 to 41:7).

Insofar as Plaintiff's § 1983 claims assert that Officer Dalrymple violated her

Fourth Amendment rights through the use of excessive force in the course of her arrest, however, Heck does not operate to bar Plaintiff's claim.  Plaintiff's municipal court convictions on charges of obstruction of the administration of law and criminal trespass did not involve the issue of whether the force Dalrymple used during the course of Plaintiff's arrest was reasonable.  While the arrest may have been lawful, Plaintiff may nevertheless allege that it was conducted in an unlawful manner, without implying the invalidity of her municipal court convictions.  Accordingly, Plaintiff's excessive force claim is not barred under the doctrine established in Heck v. Humphrey and summary judgment is not granted on that basis.

Turning to the merits of Plaintiff's excessive force claim, however, the Court finds summary judgment nonetheless appropriate.  Plaintiff claims that Officer Dalrymple violated her constitutional rights by subjecting her to excessive force during the course of the December 23, 2006 arrest.  Defendants argue that Officer Dalrymple is entitled to qualified immunity on the excessive force claim.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known'."  Bayer v. Monroe County Children & Youth Servs., 577 F.3d 186, 191 (3d Cir.2009) (quoting Pearson v. Callahan, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009)).  More simply stated, qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation . . . ."  Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).  This defense strikes a balance, shielding those officers from liability that mistakenly, but reasonably, believed their actions were lawful while permitting a plaintiff to recover against those defendants that knowingly violated the plaintiff's rights.  Curley v. Klem, 499 F.3d 199, 206-07 (3d

Cir. 2007).

In assessing whether qualified immunity applies, courts consider two inquiries: (i) whether the facts alleged, when viewed in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right; and (ii) whether the right that was [allegedly] violated was clearly established, i.e., whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Saucier v. Katz, 533 U.S. 194, 201-02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (*overruled, in part,* by a unanimous Court in Pearson, 129 S.Ct. at 818, which relaxed the rigid two-step application of the Saucier analysis in favor of a more flexible approach that permits judges of district courts and courts of appeals "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first"). The Supreme Court made clear in Pearson, that it is within the discretion of this court which of the two prongs of the qualified immunity test to address first. See Montanez v. Thompson, No. 05-4430, 2010 WL 1610612, * 5 (3d Cir. Apr. 22, 2010) (noting the elimination of "the requirement that Saucier's two steps be analyzed in sequential order"). However, "[i]f the answer to either question is 'no,' the analysis may end there." Matos v. City of Camden, No. 06-205 (NLH), 2009 WL 737101, * 3 (D.N.J. Mar. 18, 2009) (citing Pearson, 129 S.Ct. at 823).

Plaintiff's excessive force claim fails here because Plaintiff has not shown that Dalrymple violated a constitutional right in effecting her arrest. While the use of excessive force can indeed constitute an unlawful "seizure" under the Fourth Amendment, when construing an excessive force claim, this Court must consider whether the officer's use of force was objectively reasonable under the circumstances, regardless of the official's underlying motive or intentions. Graham v. Connor, 490 U.S. 386, 395-

97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In Graham, the Supreme Court expounded on the reasonableness inquiry, stating that it "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396; see also Gilles v. Davis, 427 F.3d 197, 207 (3d Cir. 2005) (quoting Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004) (finding an officer entitled to qualified immunity on excessive force claim "'after resolving all factual disputes in favor of the plaintiff, [ ] the officer's use of force was objectively reasonable under the circumstances.'"). In addition, the Third Circuit has noted other relevant factors including "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997) (abrogated on other grounds by Curley v. Klem, 499 F.3d 199 (3d Cir. 2007)); see also Couden v. Duffy, 446 F.3d 483, 496-97 (3d Cir. 2006).

When weighing these factors, courts should evaluate the officers' conduct from the officers' vantage point at the time of the incident; thus the reasonableness of a particular use of force

> must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation.

Graham, 490 U.S. at 396-97 (internal quotations and citations omitted).

Here, Plaintiff's claim of excessive force is based upon her allegation that Dalrymple "accosted [her], forcefully handcuffed her, tripped her and forced her to the ground where she suffered severe facial injuries." Compl. at ¶ 14. In response to the instant motion, Plaintiff asserts that the "totality of the circumstances" demonstrate Dalrymple's use of excessive force. Opp. Br. at 9. Plaintiff contends that Dalrymple was "irrational" in his approach to the situation. Id. Plaintiff points to testimony that while Dalyrmple knew that Plaintiff had been given permission to enter her property the night before, he nevertheless refused to request permission from the Prosecutor's office for her to re-enter, instead telling Plaintiff to call for permission herself. Plaintiff's Stmt. at ¶¶ 9-11 (citing Zaremba Dep. at 19:3-14; Dalyrmple Municipal Court Transcript at 12:8; 14:25 - 15:7; Henning Municipal Court Transcript at 98:14; Henning Dep. at 29:6). Further, Plaintiff cites her testimony that in response to her inquiry as to why she was not permitted on her property, Dalrymple screamed "your son was shooting at me." Henning Dep. at 37:11-12. Finally, Plaintiff cites the testimony of Meredith Cole that Plaintiff was thrown to the ground during the arrest by Officer Dalrymple. Plaintiff's Stmt. at ¶ 15 (citing Cole Municipal Court Transcript at 82:1-13 and Cole Dep. at 32:4-8 and 47:3).

Contrary to Plaintiff's assertions, the evidence in the record does not substantiate Plaintiff's contention that Officer Dalrymple violated her constitutional rights. It is undisputed that Plaintiff suffered injuries resulting from the arrest, however, there is insufficient evidence to support Plaintiff's contention that her injuries were caused by excessive force. Despite the allegations in the Complaint that she was thrown to the ground during the arrest, Plaintiff herself never testified that she was pushed or thrown to the ground by Dalrymple. Indeed, Plaintiff concedes that she did not testify as to her fall,

13

"but rather the witness Cole testified that she was pushed." Plaintiff's Responsive Stmt. at ¶ 33. Critically, Plaintiff relies solely on Cole's testimony to support her allegation that she was pushed. As will be discussed *infra*, however, Cole's testimony is ambiguous on the issue of whether Plaintiff's fall resulted from a deliberate push by Dalrymple.

In opposition to the instant motion, Plaintiff highlights short excerpts of Cole's deposition testimony in an attempt to establish that there is an issue for the jury. Specifically, Plaintiff cites the following:

> Q. Okay. And did you see how they went to the ground?
>
> A. It was pretty forceful. She was standing, and as – you know, her hands were behind her back with her hands on her, and on her back they had, you know, pretty hardly thrown her down to the ground.
>
> * * *
>
> Q. Okay. So even though there were some elements missing in terms of the officer's back to you, her – the view of her being obscured, your immediate reaction was, even taking into consideration that some elements are missing, that she was pushed. Is that right?
>
> A. Yes.

[Cole Dep. 32:2-8; 46:22 - 47:3]. Even this testimony is shaded by uncertainty.[3] Moreover, a full review of Cole's deposition testimony reveals that Cole was unable to state with certainty that Officer Dalrymple threw Plaintiff to the ground. Cole conceded that she did not have a full view of Plaintiff from her vantage point and that Dalrymple's

---

[3] If Cole's testimony was not riddled with uncertainty, the Court might find sufficient evidence in the record to create a credibility issue for the jury as to whether Plaintiff's injuries were the result of an accidental fall during her arrest or whether they were caused by Officer Dalrymple throwing her to the ground. This is not to suggest, however, that Dalrymple's conduct was unlawful in the situation confronted, as the Court has not undertaken such analysis.

back was facing Cole so that she could not see that Dalrymple had actually pushed her, just that it was her "perception" given that the fall was "so sudden and pretty hard as she hit the ground." Cole Dep. at 40:4-10. When asked if she could rule out whether or not Plaintiff's fall was accidental, resulting from her feet getting tangled with those of Dalrymple, as Defendants contend, Cole responded "I can't rule that out, no. I mean, I couldn't see their feet, so I have no idea." Cole Dep. at 40:14-19.

Cole's uncertainty as to whether Plaintiff's fall was accidental is also evident from her testimony during Plaintiff's municipal court trial, in which Cole stated the following:

> A.  And then um, from then, the police officer's back was to me, I really couldn't see Joyce. The next thing I knew after the handcuffs went on was that she was thrown onto the ground, face first.
>
> Q.  Uh hum. Well you've used the term thrown onto the ground. Um, is that, is that how you saw it?
>
> A.  I, I did. It looked rather forceful, um, being put down on, it wasn't a gentle put down onto the ground. She was thrown onto the ground.
>
> Q.  Did it appear from your vantage point that it may have been accidental, or a, or a slip?
>
> A.  I, I could not tell, the officer was, his back was to me.
>
> Q.  Uh hum,
>
> A.  -- so I could not see, uh, Joyce.

[Cole Municipal Court Transcript 82:1-15]. In light of Cole's uncertainty and, tellingly, in the absence of any testimony or affidavit from Plaintiff that she was actually pushed by Dalrymple in the course of the arrest, and Dalrymple's testimony to the contrary, Plaintiff cannot make out an excessive force claim. There is simply insufficient evidence

15

upon which a jury could conclude that her fall was the result of excessive force.

Given that Plaintiff cannot establish on the record before the Court that her Fourth Amendment guaranty against the use of excessive force was violated, the Court need not proceed to the second inquiry under the qualified immunity analysis. Accordingly, the Court grants summary judgment in favor of Defendants as to Plaintiff's excessive force claim.

Lastly, with respect to Plaintiff's state law claims of negligence, Defendants move for summary judgment on the basis of good faith immunity under New Jersey's Tort Claims Act, N.J.S.A. 59:3-3. Plaintiff's opposition is silent as to the applicability of good faith immunity to her state law claims. The New Jersey Tort Claims Act, N.J.S.A. 59:1, *et seq*. ("NJTCA"), provides that "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law." N.J.S.A. 59:3-3. In order to obtain the benefit of immunity under the NJTCA, a public employee must demonstrate either that he acted with objective reasonableness or establish that he acted with subjective good faith. Alston v. City of Camden, 168 N.J. 170, 186, 773 A.2d 693 (2001) (citing Fielder v. Stonack, 141 N.J. 101, 131, 661 A.2d 231 (1995)). Thus, where a defendant public employee can establish either objective reasonableness or subjective good faith, immunity attaches. Id.

Crucially, "[t]he 'objective reasonableness' standard that is used to determine whether a defendant enjoys qualified immunity from actions brought pursuant to 42 U.S.C. § 1983 is used to determine questions of good faith arising under N.J.S.A. 59:3-3." Hill v. Algor, 85 F.Supp.2d 391, 411 (D.N.J. 2000); see also Morales v. City of New Jersey, No. 05-5423 (SRC), 2009 WL 1974164, * 13 (D.N.J. Jul. 7, 2009). Here, because the Court has already determined that Defendants enjoy qualified immunity under §

1983, Defendants are immune from liability under the NJTCA as well, and summary judgment is granted in favor of Defendants.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted.


Dated: May 28, 2010

                                                    ___s/ Freda L. Wolfson_____
                                                    FREDA L. WOLFSON, U.S.D.J.